IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN JOHN RICHARDS; MARK AARON HAYNIE; THE CALGUNS FOUNDATION, INC.; THE SECOND AMENDMENT FOUNDATION, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>KAMALA HARRIS, ATTORNEY GENERAL OF CALIFORNIA; THE CALIFORNIA DEPARTMENT OF JUSTICE; DEAN BECKER; THE CITY OF ROHNERT PARK,<br><br>    Defendants.<br>_____/ | No. C 11-2493 SI and No. C 10-1255 SI<br><br>Related Case Nos. C 11-5580 SI and C 12-0452 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On May 4, 2012, the Court held a hearing on the motion to dismiss filed by defendants City of Rohnert Park and Officer Dean Becker. For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART. The deadline for filing an amended complaint is **August 13, 2012**.

**BACKGROUND**

This case arises out of the arrests of plaintiff Brendan John Richards ("Richards") for the possession of what the arresting officers believed were assault weapons banned under California law. The first arrest, in May of 2010, was made by City of Rohnert Park Police Officer Dean Becker ("Becker" or "Officer Becker"); the second arrest, in August of 2011, was made by Sonoma County

Sheriff's Deputy Greg Myers ("Myers").

Richards names as defendants Kamala Harris ("Harris"), the Attorney General of California; the California Department of Justice ("DOJ"); the City of Rohnert Park ("the City"); and Officer Becker.[1] The specific claims are as follows: (1) claims for injunctive and declaratory relief against both Harris and the DOJ, based on the premise that the California assault weapons statutes and regulations are unconstitutionally vague; (2) claims for injunctive and declaratory relief against Harris and the DOJ, arguing that the state statute authorizing the search of a person or vehicle to determine if a firearm is, in fact, an assault weapon is unconstitutional on its face and as applied; (3) claims for injunctive relief against the City of Rohnert Park and Officer Becker pursuant to 42 U.S.C. § 1983, seeking alterations to the City's training and policies; and (4) claims for civil damages against the City and Officer Becker pursuant to 42 U.S.C. § 1983.[2,3]

The facts of the first arrest are alleged to be as follows: Officer Becker, an employee of the City of Rohnert Park, responded to a reported disturbance at a Motel 6 in Rohnert Park, CA. Compl. ¶ 39. Becker encountered Richards at the scene, and, after some discussion, Richards informed Officer Becker that there were unloaded firearms in the trunk of his car. *Id.* at ¶ 40. Under California law, "carr[ying] a loaded firearm . . . in a vehicle while in any public place or on any public street" is prohibited. Cal. Pen. Code § 25850(a).[4] Officer Becker then searched the trunk pursuant to Cal. Penal Code § 25850(b), which authorizes any peace officer to "examine any firearm carried by anyone on the person or in a

---

[1] Neither Sonoma County, the Sonoma County Sheriff's Office nor Deputy Myers is named as a defendant.

[2] This case was consolidated with another case, *Haynie v. Harris*, C 10-1255 SI, pursuant to the Court's Order on June 22, 2011. Docket No. 10. There are four plaintiffs in this case: Richards, Mark Haynie, the Calguns Foundation, Inc., and the Second Amendment Foundation, Inc. However, because Richards is the only plaintiff who brings claims against the City of Rohnert Park and Officer Becker, this Order applies only to Richards' third and fourth claims for relief.

[3] There are also several cases related to this case, including C11-5580 SI and C 12-0452 SI. The latter case was filed by instant plaintiff Richards against, among others, the Sonoma County Sheriff's Office and Sheriff's Deputy Greg Myers, relating to Richards' arrest by the Sonoma County Sheriff's Office, which is detailed at pages 3-4 of this Order.

[4] At the time of the incident, the statute was codified at Cal. Penal Code § 12031(e). It was recodified with no substantive changes, effective January 1, 2012, at § 25850. For purposes of this Order, the Court cites to the statute's current location.

vehicle" in order to determine "whether or not [the] firearm is loaded." Cal. Pen. Code § 25850(b). Becker found two pistols and one rifle in the trunk, all of which were unloaded, as had been represented by Richards. Compl. ¶ 44. Officer Becker believed that two of the firearms were assault weapons within the meaning of the Assault Weapons Control Act ("AWCA"), Cal. Penal Code § 30605(a),[5] which prohibits the possession of assault weapons, and placed Richards under arrest. *Id.* at ¶ 46. After reviewing an incident report prepared by Officer Becker, the Sonoma County District Attorney charged Richards with two violations of the AWCA, as well four counts of possession of large capacity magazines. *Id*. at ¶¶ 46-47. Richards spent six days in jail before his family could post his bail; obtaining bail required payment of a non-refundable fee of $1,400. *Id.* at ¶ 48. On September 9, 2010, the Sonoma County District Attorney dropped all charges against Richards based on an August 16, 2010 report by California Department of Justice Bureau of Forensic Services Senior Criminalist John Yount, which stated that none of the firearms in Richards' possession at the time of his arrest were assault weapons within the meaning of the AWCA. *Id.* at ¶ 49-50.

The second arrest occurred on August 14, 2011, when Richards was arrested by the Sonoma County Sheriff's Office. *Id.* at ¶ 60. Sheriff's Deputy Greg Myers ("Myers") encountered Richards, who informed Myers that he had firearms in the trunk of his car. *Id.* at ¶ 61. Richards declined to consent a search of his car, but Myers, acting pursuant to Cal. Penal Code § 25850, handcuffed Richards and searched the trunk. *Id.* at ¶ 61. Myers found a firearm in the trunk that he believed was equipped with a "flash suppressor," which would have rendered the firearm an assault weapon pursuant to Cal. Penal Code § 30515. *Id.* at ¶ 62. Myers placed Richards under arrest for violating Cal. Penal Code § 30605. *Id.* After Criminalist Yount stated in a report that the weapon was, in fact, not an assault weapon under California law, the charges against Richards were dropped on September 19, 2011. *Id.* at ¶ 62, 67.

---

[5] At the time of the incident, § 30605 was previously codified at Cal. Penal Code § 12280(e). The Court cites to the statute's current location of § 30605.

3

**LEGAL STANDARD**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court examines the complaint to determine if it states claims upon which relief can be granted. *Gonzalez v. Metropolitan Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir. 1999). The Court must take all factual allegations found in the complaint as true and construe them in the light most favorable to the plaintiff. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In order to avoid dismissal for failure to state a claim, the plaintiff has the burden of submitting a "short and plain statement of the claim showing that [he or she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, such a showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 350 U.S. 544, 555 (2007). Rather, the complaint must contain factual allegations that "raise a right to relief above the speculative level." *Id*.

In the event that the court dismisses a complaint because the plaintiff has failed to meet its burden of pleading, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Id.* at 1108 (*quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (alteration in original)). This liberality with which courts are to grant leave to amend is consistent with Rule 15(a)(2)'s requirement that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

**DISCUSSION**

**1. Claims against Officer Becker**

**A. Claim for civil damages**

Richards has filed suit against Officer Becker under 42 U.S.C. § 1983 seeking civil damages and injunctive relief. Richards alleges that his arrest by Officer Becker for possession of banned assault weapons was unlawful because the weapons he possessed, which were equipped with devices called "bullet buttons," were, in fact, not illegal under California law. He argues that he was arrested for engaging in lawful activity and that his arrest therefore violated his Fourth Amendment rights against unreasonable search and seizure. Becker has moved to dismiss Richards' claim for damages, arguing that he is entitled to qualified immunity and cannot be sued for damages for actions taken pursuant to

4

his employment as a Rohnert Park police officer.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Officer Becker argues that he is entitled to qualified immunity because "as evidenced in plaintiffs' Amended Consolidated Complaint, the law in this area is not settled." Motion at 9:13-14. Citing the amended consolidated complaint, Becker argues,

> Thus, plaintiffs assert that a rifle equipped with a "bullet button" can no longer be considered an assault rifle because it no longer contains a detachable magazine. (ACC ¶¶ 21, 50). The DOJ, however, contends that it is still "unclear whether such a configuration negates the rifle's 'capacity to accept' a detachable magazine." (*Id*. ¶ 95). Plaintiffs allege that the DOJ's refusal to clarify that issue renders the entire AWCA unconstitutionally vague and ambiguous. (*See id*. ¶ 104). They claim the law exists in a "state of confusion caused by the current vague and ambiguous statutes" and that this "result[s] in the wrongful arrest of innocent gun-owners." (*Id*. ¶ 102).

*Id*. at 9:14-21. Thus, Becker contends that plaintiffs' own allegations demonstrate that Richard's arrest did not violate clearly established law.

As framed in defendants' motion, Officer Becker's qualified immunity argument goes to the central legal issue regarding the constitutionality of the AWCA, and the Court finds that it is premature to resolve this question at this early stage of the litigation. In addition, the Court notes that at the May 4, 2012, hearing, defense counsel referenced a number of facts regarding Richard's arrest that are not included in the complaint and that would bear on the qualified immunity analysis. For example, defense counsel stated that the police reports show, *inter alia*, that Officer Becker was responding to a report of domestic violence at the hotel, that the events took place late at night, and that Richards may have had a large knife tucked into his belt when Officer Becker encountered him. These facts are relevant to determining, for purposes of qualified immunity, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Accordingly, the Court DENIES defendant's motion to dismiss plaintiff's claim for civil damages against Officer Becker, without prejudice to renewing the qualified immunity argument on a fuller factual record in a motion for summary judgment.

### B. Claim for injunctive relief

Richards also seeks injunctive relief against Officer Becker which would "require amendments to [the City of Rohnert Park's] policies and training to address [i]dentification of [a]ssault [w]eapons under California law." Compl. ¶ 111. At the May 4, 2012 hearing, plaintiff's counsel conceded that this claim should not have been brought against Officer Becker. Accordingly, the Court GRANTS defendants' motion to dismiss this claim without leave to amend.

## 2. Claims against City of Rohnert Park

### A. Claim for injunctive relief

Richards also seeks injunctive relief against the City that would "require amendments to its policies and training" regarding the identification by its police officers of assault weapons banned under California law and "compliance with the Fourth Amendment." Compl. ¶ 111. The City argues that Richards lacks standing to seek injunctive relief against it under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

Prior to the consolidation of Richards' case with plaintiff Mark Haynie's case, the DOJ filed a motion to dismiss Haynie's claim for prospective injunctive relief against the DOJ and Attorney General Harris, arguing that Haynie lacked standing to pursue prospective injunctive relief. *See* Docket No. C10-1255, No. 26. After that motion was filed, the Court consolidated Haynie's case with Richards' case. *See* Docket No. C10-1255, No. 36. On October 22, 2011, the Court granted the defendants' motion to dismiss as to both Haynie's and Richards' claims against the DOJ seeking prospective injunctive relief, stating,

> Under *Lyons*, plaintiffs' allegations that they fear future wrongful arrests do not demonstrate a case or controversy and fail to establish standing to seek an order compelling DOJ to issue a memorandum to prevent wrongful arrests. *Lyons* holds that past exposure to illegal conduct without any continuing current adverse effects is not enough to show a case or controversy for injunctive relief, and that even allegation of routine misconduct is not sufficient. *See Lyons*, 461 U.S. at 102, 105. Under the *Lyons* standard, to show a real immediate threat and demonstrate a case or controversy, Haynie and Richards would have to allege either that *all* law enforcement officers in California *always* arrest any citizen they come into contact with who is lawfully in possession of a weapon with a bullet button, or that the DOJ has ordered or authorized California law enforcement officials to act in such a manner. *See id.* at 105-06.

6

Order, Docket No. C10-1255, No. 42 (emphasis in original).

After the dismissal of the initial complaint, plaintiffs Richards and Haynie filed the instant Amended Consolidated Complaint. Docket No. 16. In the consolidated complaint, the claim for injunctive relief against the City contains substantially similar allegations to those made in the initial complaint that was dismissed for lack of standing. The City now argues that the Court's reasoning in its October 22, 2011 Order applies with equal force to Richards' instant claim for injunctive relief against the City. The Court agrees with the City.

Richards argues that the new allegations about his second arrest by the Sonoma County Sheriff's Office show that he is "realistically threatened by a repetition of wrongful arrests." Compl. ¶ 70. However, these allegations will not suffice to establish standing to seek injunctive relief under *Lyons*. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 95-96. Therefore, even assuming that both arrests by Officer Becker and Sonoma County Sheriff's Deputy Myers constituted illegal conduct, these arrests alone do not provide evidence of continuing adverse effects. Under *Lyons*, to have standing to seek injunctive against the City of Rohnert Park, Richards would have to allege that every Rohnert Park police officer will without fail arrest anyone who he finds in possession of a firearm with a bullet button. *See id.* at 106. He has not done so.

Relatedly, Richards' second arrest by the Sonoma County Sheriff's Office cannot support his claim for injunctive relief against the City of Rohnert Park. In the instant suit, Richards is suing only the City of Rohnert Park, not Sonoma County. Therefore, a second wrongful arrest by the Sonoma County Sheriff's Office, even if substantially similar to the first arrest by Officer Becker, cannot satisfy the standing requirement for seeking injunctive relief against the City of Rohnert Park. In other words, the Court cannot find that Richards has standing to seek injunctive relief against the City of Rohnert Park based, at least in part, on alleged illegal conduct committed by an entirely separate and distinct governmental entity. Accordingly, the Court GRANTS defendants' motion to dismiss Richards' claim against the City for injunctive relief without leave to amend.

### B. Claim for civil damages

Richards also seeks civil damages pursuant to 42 U.S.C. § 1983 against the City of Rohnert Park. "A municipality cannot be held liable under . . . 42 U.S.C. § 1983 under a *respondeat superior* theory." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). Rather, "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible" under the statute. *Id.* at 694. In this case, while unclear from the complaint, it appears that Richards' claims against the City stem from an alleged failure to train its officers to recognize what firearms constitute illegal assault weapons under the state assault weapons statute. While, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy" for purposes of § 1983, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). In order to overcome this high bar militating against municipal liability based on a city's failure to train, a plaintiff must show that the failure amounted to "deliberate indifference to the rights of persons with whom the [untrained officers] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In addition, showing "[d]eliberate indifference is a stringent" burden to overcome, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (internal quotations omitted). Lastly, this failure to train must cause the constitutional violation to occur. *Monell*, 436 U.S. at 691.

In this case, Richards has not even alleged that the City failed to train its officers. The City is first mentioned in the complaint's description of parties, which alleges that the City is "responsible for setting the policies and procedures of [the Department of Public Safety], including, but not limited to the training and discipline of peace officers employed by [the City]." Compl. ¶ 11. The City is not mentioned again until the claims for relief, where Richards seeks "injunctive relief against . . . [the City] . . . that will require amendments to [its] policies and training" regarding identification of assault weapons. *Id.* at ¶ 111. While Richards alleges that the City is responsible for the training of its

8

employees, the complaint does not allege that the City failed to train them, that this failure reflected a deliberate indifference by a City policy-maker towards the rights of citizens like Richards, or that the failure to train caused Officer Becker to violate Richards' rights. Therefore, the claims against the City are dismissed with leave to amend because Richards has not properly pled claims for § 1983 liability against the City.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff may file an amended complaint consistent with this order no later than **August 13, 2012.**

**IT IS SO ORDERED.**

Dated: July 30, 2012

SUSAN ILLSTON
United States District Judge